IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | **Crim. No. 08-48 Erie** |
| ) | |
| LAMAR ANTONIO OWENS, ) | |
| ) | |
| Defendant ) | |

## Opinion

Defendant Lamar Antonio Owens appeared before this Court for sentencing on August 4, 2009.  At Mr. Owens' sentencing I applied a 1-to-1 crack-to-powder ratio, an approach to sentencing in crack cocaine cases which I intend to apply in all future crack cocaine sentencings.  I write this Opinion to explain my reasons for this.

I.

Mr. Owens was charged in the Indictment with (i) Conspiracy to Possess with Intent to Distribute and Distribution of Five Hundred Grams or More of Cocaine and Fifty Grams or More of Cocaine Base, in violation of 21 U.S.C. § 846; (ii) Possession with Intent to Distribute and Distribution of Fifty Grams or More of Cocaine Base, in violation of 21 U.S.C.  §§ 841(a)(1) and 841(b)(1)(A)(iii); and (iii) Possession with Intent to Distribute and Distribution of Five Hundred Grams or More of Cocaine, in violation of 21 U.S.C.  §§ 841(a)(1) and 841(b)(1)(B)(ii).  On May 12, 2009, Mr. Owens pleaded guilty to all three counts without a plea agreement.

Mr. Owens acknowledged responsibility for 103 grams of cocaine base, commonly known as crack cocaine, and 2,306 grams of powder cocaine.  The government contended at sentencing that because this case involved both crack and powder cocaine, it was not an

appropriate case to exercise my discretion and apply a 1-to-1 ratio.  I disagreed.  On the contrary, I concluded that this case readily demonstrates the disparity in sentencing between crack and powder cocaine, which revealed itself here as evidenced by the lower sentencing range when the 1-to-1 ratio was applied.  The drug quantities were converted to a marijuana equivalent because of the presence of two differing controlled substances pursuant to U.S.S.G. § 2D1.1, note 10, resulting in an offense level of 30.  The offense level was decreased by three levels due to Mr. Owens' timely acceptance of responsibility, and by two levels because he met the "safety valve" criteria under 18 U.S.C § 3553(f).  Thus, Mr. Owens' total offense level was 25, and with a Criminal History Category of I, the applicable guideline sentencing range was calculated to be 57 to 71 months' imprisonment.

Mr. Owens's counsel submitted a Position with Respect to Sentencing Factors, arguing that I should exercise my discretion and impose a sentence using a 1-to-1 crack-powder ratio.  Applying such a ratio in this case results in a total offense level of 23, and a corresponding guideline sentencing range of 46 to 57 months' imprisonment.  Mr. Owens' counsel further argued that I should vary from this range and impose a sentence of 36 months.  Although I declined to vary, following the reasoning set forth in United States v. Gully, 619 F.Supp.2d 633 (N.D. Iowa 2009) and United States v. Lewis, __ F.Supp.2d __, 2009 WL 1591633 (D.D.C. June 9, 2009), I did apply the 1-to-1 crack-powder ratio imposing a sentence of 50 months' imprisonment.

## II.

The United States Supreme Court in Spears v. United States, __ U.S. __, 129 S.Ct. 840, 172 L.Ed.2d 596 (2009) (per curiam) held that district courts "are entitled to reject and vary categorically from the crack-cocaine Guidelines based on a policy disagreement with those

Guidelines." 129 S.Ct. at 843-44.   In particular, the Supreme Court explained the district court's power as follows:

> A sentencing judge who is given the power to reject the disparity created by the crack-to-powder ratio must also possess the power to apply a different ratio which, in his judgment, corrects the disparity.  Put simply, the ability to reduce a mine-run defendant's sentence necessarily permits adoption of a replacement ratio....

Id. at 843.

I have concluded that there are sound policy reasons for adopting a 1-to-1 crack to powder ratio for all crack cocaine sentencings.   This conclusion is in accord with the United States Department of Justice's position endorsing the elimination of the disparity between crack and powder cocaine in sentencing.  Recently, Attorney General Eric Holder stated:

> It is the view of this Administration that the 100-to-1 crack-powder sentencing ratio is simply wrong.  It is plainly unjust to hand down wildly disparate prison sentences for materially similar crimes.  It is unjust to have a sentencing disparity that disproportionately and illogically affects some racial groups.

Attorney General Eric Holder, Remarks as Prepared for Delivery by Attorney General Eric Holder at the D.C. Court of Appeals Judicial Conference (June 19, 2009) (www.usdoj.gov/ag/speeches/2009/ag-speech-090619.html.)  In addition, Assistant Attorney General Lanny A. Breuer has stated in part as follows:

> [W]e cannot ignore the mounting evidence that the current cocaine sentencing disparity is difficult to justify based on the facts and science, including evidence that crack is not an inherently more addictive substance than powder cocaine.  We know of no other controlled substance where the penalty structure differs so dramatically because of the drug's form.
> Moreover, the Sentencing Commission has documented that the quantity-based cocaine sentencing scheme often punishes low-level crack offenders far more harshly than similarly situated powder cocaine offenders.  . . .  The impact of these laws has fueled the belief across the country that federal cocaine laws are unjust.

3

Restoring Fairness to Federal Sentencing: Addressing the Crack-Powder Disparity: Hearing Before the Subcomm. on Crimes and Drugs of the S. Comm. on the Judiciary, 111th Cong. 1 (2009) (Statement of Lanny A. Breuer, Assistant Attorney Gen. of the Criminal Division, United States Department of Justice, at 9.)  In eliminating the sentencing disparity between crack and powder cocaine the court is still empowered to impose a sentence that "fully accounts for violence, chronic offenders, weapon possession and other aggravating factors associated – in individual cases – with both crack and powder cocaine trafficking." Id. at 10-11.

In addition, I have adopted the reasoning set forth in United States v. Gully, 619 F.Supp.2d 633 (N.D. Iowa 2009), and United States v. Lewis, __ F.Supp.2d __, 2009 WL 1591633 (D.D.C. June 9, 2009).

> As Judge Bennett explained in some detail in Gully, there are at least five distinct policy objections to a disparity--any disparity--between crack and powder cocaine sentences: (1) the current cocaine Guidelines "do not exemplify the Commission's exercise of its characteristic institutional role," Kimbrough v. United States, 128 S.Ct. at 575; see also Spears v. United States, 129 S.Ct. at 843; (2) the assumptions about the relative harmfulness of crack and powder cocaine have not been borne out by the evidence; (3) the crack/powder disparity perversely tends to punish lower-level dealers more harshly than major traffickers because imported powder cocaine is converted into crack at a lower level in the trafficking hierarchy; (4) the 20-to-1 ratio "still improperly uses the quantity ratio as a proxy for various kinds of harm and violence that may or may not come with trafficking of crack cocaine in a particular case"; and (5) the crack/powder disparity fosters disrespect for and mistrust in the criminal justice system because of its disproportionate impact on African American defendants. United States v. Gully, [619 F.Supp.2d at 639, 641], 2009 WL 1370898, at *6-*7.

Lewis, 2009 WL 1591633, at *4.

A significant factor in my decision to reject the 100 to 1 ratio is that such a ratio is a "remarkably blunt instrument" when used as a proxy to punish crack offenders based on the assumption that offenses involving crack are more likely to involve violence, weapons, and higher levels of crime. Gully, 619 F.Supp.2d at 641. The better approach is to enhance the sentence of an individual defendant in cases that actually involve violence, weapons, or other aggravating factors, depending as well on whether the particular defendant is a chronic offender. See id. ("the appropriate course is to treat interchangeable forms of cocaine as equivalents, and to enhance punishment when additional criminal effects and use of weapons, for example, are present in a particular case."); and Lewis, 2009 WL 1591633, at *5 (after calculating the 1-to-ratio the court may vary upwardly "to take account of the defendant's history of violence, the use of violence in a particular case, injury to others, the presence or use of firearms or other weapons, or the defendant's recidivism.").

In future crack cocaine cases, therefore, I will use a 1-to-1 crack-to-powder ratio and separately consider any aggravating factors as well as mitigating factors under 18 U.S.C. § 3553(a). Like the district court in both Gully and Lewis, my method in crack cocaine cases will change only slightly. I will first calculate the applicable guideline range under the Sentencing Guidelines precisely as I would have done before United States v. Booker, 125 S.Ct. 738 (2005). United States v. Gunter, 462 F.3d 237, 247 (3d Cir. 2006). I will also "calculate an alternative sentencing range using a 1-to-1 ratio (by using the powder cocaine Guidelines) and then factor in any appropriate adjustments or departures contained within the Guidelines." Lewis, 2009 WL 1591633, at *5. Next, I will "formally rule on the motions of both parties and state on the record whether [I am] granting a departure and how that departure affects the Guidelines calculation." Gunter, 462 F.3d at 247; see also United States v. Lofink, 564 F.3d 232, 238 n.14 (3d Cir. 2009).

5

Finally, "after giving both sides the chance to argue for the sentences they deem appropriate, [I will] exercise [my] discretion by considering all of the § 3553(a) factors and determining the appropriate sentence to impose." United States v. Wise, 515 F.3d 207, 216 (3d Cir. 2008). Specifically, as it relates to crack cocaine sentences, in the final step I will "consider whether it is appropriate to vary from the alternative 1-to-1 sentencing range based on the Court's consideration of the relevant factors set forth in 18 U.S.C. § 3553(a) as they apply to the individual defendant and the particular case--including, but of course not limited to, any aggravating factors such as violence, injury, recidivism or possession or use of weapons." Id.; see also Gully, 619 F.Supp.2d at 642.  In cases that involve a statutory mandatory minimum sentence, however, I will impose such mandatory sentences.

### III.

Applying the approach in this case, as already stated, under the Sentencing Guidelines I find that the offense level is 25 and the Criminal History Category is Roman Numeral I.  The Defendant qualifies under the "safety valve" provisions of 18 U.S.C § 3553(f) and thus the statutory mandatory minimum is not applicable in this case.  The applicable guideline range under the Sentencing Guidelines is therefore 57 to 71 months' imprisonment.  There were no legal objections to the calculations by the parties.  The alternative guideline range calculation using a 1-to-1 ratio with an offense level of 25, results in an alternative advisory guideline range of 46 to 57 months' imprisonment.  I imposed a sentence of 50 months' imprisonment, 4 months above the bottom of the range, based on the fact that Mr. Owens was a large scale supplier of cocaine to the Erie, Pennsylvania area.  This sentence is set forth in the Judgment and Commitment order issued on August 6, 2009.

IV.

I find that a 1-to-1 crack-to-powder ratio is appropriate in this case and will apply this ratio in all future crack cocaine cases. I will vary from the alternative 1-to-1 sentencing range based on my consideration of the relevant factors set forth in 18 U.S.C. § 3553(a) as they apply to the individual defendant in each case.


*August 12, 2009*
Date

*Maurice B. Cohill, Jr.*
Maurice B. Cohill, Jr.,
Senior District Judge